UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| LOURDES SANCHEZ, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 3:21-CV-0071-B |
| | § | |
| SHIRLEY A. PALACIOS and JORGE T. GUARDADO, | § | |
| | § | |
| | § | |
| Defendants. | § | |

<u>MEMORANDUM OPINION AND ORDER</u>

Before the Court is Plaintiff Lourdes Sanchez ("Plaintiff")'s Motion for Partial Summary Judgment (Doc. 23). For the reasons that follow, the Court **DENIES** the motion.

**I.**

**BACKGROUND[1]**

This is a claim for unpaid overtime wages under the Fair Labor Standards Act ("FLSA"). Defendants Shirley A. Palacios and Jorge T. Guardado (collectively, "Defendants") operate JSE Freight Solution, Inc., a trucking carrier company. *See* Doc. 8, Guardado Answer, ¶ 2; Doc. 10, Guardado Answer, ¶ 2; Doc. 24-1, Sanchez Decl., ¶ 4. Though the parties disagree about the exact nature of the relationship, they do agree that Plaintiff performed work for Defendants as a dispatcher from May 2018 to June 2020. Doc. 24-1, Sanchez Decl., ¶ 3.

Plaintiff performed her tasks from her home, where she claims she was expected to be "on-call 24 hours a day, 7 days a week" and was required to seek approval before taking time off. *Id.* ¶¶ 10–11,

---

[1] The Court recites the factual background based on the parties' pleadings and briefings. Where a fact is disputed, the Court notes as much.

27. Her responsibilities primarily consisted of finding customer freight loads in need of transport and then booking the loads for pick-up by Defendants' trucks. *Id.* ¶¶ 5–7. To facilitate Plaintiff's work, Defendants provided Plaintiff with authorization to act as their agent, which was necessary for her to access an online "load board"—a digital forum where potential customers can list freight loads in need of transport. *Id.* ¶ 7. According to Plaintiff, she was required to seek "approval from Defendant Guardado prior to accepting loads for certain amounts of money and was expected to negotiate as Defendants' agent for higher paying loads." *Id.* ¶ 15. Once a load was booked, Plaintiff would remotely track the transport and follow up with the driver to address any issues that arose in transit. *Id.* ¶¶ 5, 7. In all, Plaintiff estimates that she worked "11 to 12 hours daily" from Monday through Saturday. *Id.* ¶ 11. In addition to her dispatching duties, Plaintiff occasionally spent three to four hours on weekends performing invoicing work for Defendants. *Id.* ¶¶ 8, 14.

Defendants set Plaintiff's rate on a task-by-task basis. For dispatching work, Plaintiff was paid $25 for each load paying under $600[2] and $50 for each load paying over $600. *Id.* ¶ 14. For invoicing work, Plaintiff was paid either $50 or $75 to complete all invoices provided to her on a given day. *Id.* Throughout the parties' working relationship, "Defendants classified Plaintiff as an independent contractor and exempt from the overtime [pay] requirements of the FLSA." Doc. 1, Compl., ¶ 26; Doc. 8, Guardado Answer, ¶ 30 (admitting this allegation); Doc. 10, Palacios Answer, ¶ 30 (same).

It is undisputed that Plaintiff performed dispatching work for other trucking companies during her working relationship with Defendants. *See* Doc. 24-1, Sanchez Decl., ¶ 16; Doc. 28, Defs.' Br., ¶ 26. Plaintiff maintains that she did so at the direction or suggestion of Defendants, and that

---

[2] Plaintiff's Declaration says she was paid $25 for loads paying under "$60"; however, the context of this paragraph suggests that "$60" was a typographical error and meant to read "$600." *See* Doc. 24-1, Sanchez Decl., ¶ 14.

some of the companies she worked for were owned by family members of Defendants. *See* Doc. 24-1, Sanchez Decl., ¶ 16. Defendants contend Plaintiff's outside work was indicative of the Plaintiff's preference for flexibility, i.e., that she be able to place loads with other trucking companies when one was unavailable. Doc. 28, Defs.' Br., ¶¶ 11–12; *see* Doc. 14, Guardado Aff..

The parties' business relationship ended in June 2020, when Plaintiff claims she tested positive for COVID-19, requested sick leave, but was terminated in response. Doc. 24-1, Sanchez Decl., ¶¶ 23–25.

On January 12, 2021, Plaintiff filed the instant suit bringing claims for (1) failure to pay overtime under the FLSA and (2) failure to provide paid sick leave under the Families First Coronavirus Response Act ("FFCRA"). Doc. 1, Compl., ¶¶ 61–80. On April 12, 2022, Plaintiff filed the instant motion seeking partial summary judgment on her FLSA claim. *See* Doc. 23, Pl.'s Mot. The motion is fully briefed and ripe for review. The Court considers it below.

## II.

## LEGAL STANDARD

Federal Rule of Civil Procedure 56(a) provides that summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The substantive law governing a matter determines which facts are material to a case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The summary-judgment movant bears the burden of proving that no genuine issue of material fact exists. *Latimer v. Smithkline & Fr. Labs.*, 919 F.2d 301, 303 (5th Cir. 1990). Usually, this requires the movant to identify "those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes

demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quotation marks omitted).

Once the summary-judgment movant has met this burden, the burden shifts to the nonmovant to "go beyond the pleadings and designate specific facts" showing that a genuine issue exists. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (per curiam) (citing *Celotex*, 477 U.S. at 325). "This burden is not satisfied with 'some metaphysical doubt as to the material facts,' by 'conclusory allegations,' by 'unsubstantiated assertions,' or by only a 'scintilla' of evidence.' *Id.* (citations omitted). Instead, the nonmoving party must "come forward with specific facts showing that there is a *genuine issue for trial*." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quotation marks omitted). "[C]ourts are required to view the facts and draw reasonable inferences in the light most favorable to the party opposing the summary judgment motion." *Scott v. Harris*, 550 U.S. 372, 378 (2007) (alterations incorporated and quotation marks omitted). But the court need not "sift through the record in search of evidence to support a party's opposition to summary judgment." *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998) (quoting *Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915 n.7 (5th Cir. 1992)). If the nonmovant is unable to make the required showing, the court must grant summary judgment. *Little*, 37 F.3d at 1076.

## III.

## ANALYSIS

### A.    *FLSA Unpaid Overtime Claims Overview*

The Court begins with a brief review of the legal framework for unpaid overtime claims under the FLSA. The FLSA provides overtime pay requirements for employers engaged in interstate commerce. *See* 29 U.S.C. § 207(a)(1). Under § 216(b), a qualifying employer is liable to an employee

whom it fails to pay one-and-one-half times the regular hourly rate of hours worked over forty hours per week. To prevail on an unpaid overtime claim, a plaintiff must first establish the following four elements: "(1) that there existed an employer-employee relationship during the unpaid overtime periods claimed; (2) that the employee engaged in activities within the coverage of the FLSA; (3) that the employer violated the FLSA's overtime wage requirements; and (4) the amount of overtime compensation due." *Parrish v. Premier Directional Drilling, L.P.*, 917 F.3d 369, 379 (5th Cir. 2019) (quoting *Johnson v. Heckmann Water Res. (CVR), Inc.*, 758 F.3d 627, 630 (5th Cir. 2014)). If the employee establishes each element, "the burden then shifts to the employer to 'come forward with evidence of the precise amount of work performed or with evidence to negative the reasonableness of the inference to be drawn from the employee's evidence.'" *Id.*

The parties' briefing on Plaintiff's instant motion predominantly concerns the first element of Plaintiff's prima facie case. Specifically, the parties dispute whether Plaintiff was Defendants' employee and therefore covered by the FLSA, or merely an independent contractor working outside the FLSA's scope. *See* Doc. 24, Pl.'s Br., 9–16; Doc. 28, Defs.' Br., ¶¶ 6–7, 26–27. *See generally Faludi v. U.S. Shale Sols., L.L.C.*, 950 F.3d 269, 272 (5th Cir. 2020) (noting the difference between employees and independent contractors under the FLSA). Relevant here is that Defendants maintain a genuine issue of material fact exists regarding Plaintiff's appropriate employment classification under the FLSA. *See* Doc. 28, Defs.' Br., ¶¶ 6–7. 26–27. As explained below, the Court agrees with Defendants and therefore denies Plaintiff's motion for partial summary judgment.[3]

---

[3] Because the Court finds a genuine issue of material fact exists as to whether Plaintiff and Defendants maintained an employer-employee relationship, the Court does not address the parties' arguments regarding the other elements of Plaintiff's FLSA claim.

B.        *Genuine Issues of Material Fact Exist Regarding Whether Plaintiff Was Defendants' Employee*

To determine whether an individual is an employee or an independent contractor, courts in

the Fifth Circuit examine five non-exhaustive factors (the "economic realities" or "*Silk*" factors):

> (1) the degree of control exercised by the alleged employer; (2) the extent of the relative investments of the worker and the alleged employer; (3) the degree to which the worker's opportunity for profit or loss is determined by the alleged employer; (4) the skill and initiative required in performing the job; and (5) the permanency of the relationship.

*Hobbs v. Petroplex Pipe & Constr., Inc.*, 946 F.3d 824, 829 (5th Cir. 2020) (quoting *Hopkins v.*

*Cornerstone Am.*, 545 F.3d 338, 343 (5th Cir. 2008)). "No single factor is determinative. Rather,

each factor is a tool used to gauge the *economic dependence* of the alleged employee, and each must

be applied with this ultimate concept in mind." *Id.*

Below, the Court begins by addressing the parties' evidentiary arguments regarding the

evidence appropriately considered at this stage. The Court then examines each *Silk* factor listed

above in turn.[4]

---

[4] In her Reply, Plaintiff states that "the State of Texas has already determined that [she] is an employee for the purposes of unemployment benefits," citing her own declaration and a benefit payment confirmation email from the Texas Workforce Commission ("TWC"). Doc. 31, Pl.'s Reply, 1. Plaintiff appears to suggest that the Court could find she was Defendants' employee under the FLSA based on the TWC's determination of her employment status. *See id.* ("However, should this Court rely on the five factors described in *Hobbs* . . . ."). She does not, however, explain why this is so. *See id.* Ignoring the propriety of Plaintiff making this argument for the first time in her reply, *see Jones v. Cain*, 600 F.3d 527, 541 (5th Cir. 2010) ("Arguments raised for the first time in a reply brief are generally waived."), the Court is unaware of any reason why it would be bound by the TWC's classification of Plaintiff's employment in an administrative process that did not involve Defendants. *See generally Thomas v. Hughes*, 27 F.4th 995, 1007 (5th Cir. 2022) (reciting the elements for issue preclusion); *Alaniz v. Gordon Reed & Assoc.*, 2020 WL 1137628, at *5 (W.D. La. Mar. 9, 2020) (declining to give preclusive effect to the TWC's conclusion—made after an adversarial proceeding involving both parties—that the plaintiff was an independent contractor because "the standard for determining whether an individual was properly classified as an independent contractor is different between Texas state law and the law of the Fifth Circuit"). Accordingly, the Court gives the TWC's determination no weight and proceeds to analyze the *Silk* factors.

1.      Evidentiary Arguments

As a threshold issue, the Court first determines what evidence it may properly consider in disposing of the motion before it.

i.      *Plaintiff's summary-judgment evidence*

Plaintiff's motion is supported almost entirely by her own written declaration. *See* Doc. 24, Pl.'s Br.; Doc. 24-1, Sanchez Decl. Defendants object to Plaintiff's declaration on the grounds that it "contains statements that are conclusory and inadmissible as evidence" and that Plaintiff "has no personal knowledge of the assertions she makes." Doc. 28, Defs.' Br., ¶ 22. Defendants do not, however, support this argument by pointing to any specific portions of the affidavit other than paragraph 20, wherein Plaintiff states: "I estimate that Defendants had one other dispatcher working for them in the State of Texas. I did not pay that dispatcher's salary and was not involved in hiring dispatchers for Defendants." *See id.*; Doc. 24-1, Sanchez Decl., ¶ 20.

The Court finds that Plaintiff's statement is not conclusory and is supported by personal knowledge. As Plaintiff points out, the words "I estimate" at the beginning of the challenged statement clarify that her statement is merely an estimation based upon her experience working for Defendants. *See id.*; Doc. 31, Pl.'s Reply, 10. But even if this allegation were conclusory or made without personal knowledge, the Court notes that this would not justify ignoring the remaining twenty-nine paragraphs of content in Plaintiff's declaration. *See Salas v. Carpenter*, 980 F.2d 299, 304 (5th Cir. 1992) ("The court should disregard only the inadmissible portions of a challenged affidavit."); *see also Fairview Hosp., LLC v. State Bank of Tex.*, 2019 WL 2491970, at *4 (N.D. Tex. June 14, 2019). And because Defendants have failed to specifically object to any other portions of the affidavit or otherwise explain why the entire affidavit is incompetent, the Court **OVERRULES**

Defendants' objection to Plaintiff's affidavit. *Cf. Nat'l Urban League, Inc. v. Urban League of Greater Dall. & N. Cent. Tex., Inc.*, 2017 WL 4351301, at *3–4 (N.D. Tex. Sept. 29, 2017) (overruling vague or generalized objections to affidavits).

> ii.    *Defendants' summary-judgment evidence*

Defendants provide as summary-judgment evidence a copy of Plaintiff's 2019 tax return and a 2021 application for a business loan that Plaintiff filed through the federal Paycheck Protection Program ("PPP"), both of which show that Plaintiff represented to government agencies that she was an independent contractor during the relevant time frame. *See id.* ¶ 26; Doc. 29, Defs.' App. Ex. A (covering the year 2019); Ex. B (stating she had been in business for herself since 2017). Plaintiff argues this evidence is irrelevant to the Court's factors analysis because her subjective belief regarding her employment status does not alter the economic realities of her circumstances. *See* Doc. 31, Pl.'s Reply, 9. While Plaintiff is correct that how she represented herself in these documents "has limited relevance in the economic reality test," the Court may still properly consider the documents to the extent they contain information relevant to any of the five factors. *See Parrish*, 917 F.3d at 388.

Even though the Court may consider Defendants' cited documents, the Court notes that the documents do not support many of the factual assertions made in Defendants' response to Plaintiff's motion. Indeed, Defendants' response largely refutes Plaintiff's version of the facts without citation to any material whatsoever. Doc. 28, Defs.' Br., ¶¶ 7–16. *See generally* Fed. R. Civ. P. 56(c)(1) ("A party asserting that a fact . . . is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record . . . ."); *McAlpine v. Porsche Cars N. Am. Inc.*, 428 F. App'x 261, 263–64 (5th Cir. 2010) ("To defeat a motion for summary judgment, 'an opposing party may

not rely merely on allegations or denials in its own pleading; rather, its response must—by affidavits

or as otherwise provided in [Rule 56]—set out specific facts showing a genuine issue for trial.'"

(quoting Fed. R. Civ. P. 56(e)(2))). The Court does recognize, however, that some of Plaintiff's

factual assertions are supported by Defendant Guardado's Affidavit, filed in this case on April 14,

2021. *See* Doc. 14, Guardado Aff. As such, the Court will consider Defendants' factual assertions

only to the extent that they are reasonably supported by the documents cited in its motion or by

Defendant Guardado's Affidavit. *See id.*; Doc. 29, Defs.' App.

2.      The *Silk* Factors

Having determined the evidence to be considered, the Court now addresses each *Silk* factor

and concludes that genuine issues of material fact prevent the Court from finding that Plaintiff was

Defendants' employee as a matter of law.

i.      *Degree of control exercised by the alleged employer*

The Court first considers the degree of control exercised by each party. As the Fifth Circuit

has explained, "[c]ontrol is only significant when it shows an individual exerts such a control over

a meaningful part of the business that [the individual] stands as a separate economic entity." *Parrish*,

917 F.3d at 381 (second alteration in original) (quoting *Usery v. Pilgrim Equip. Co.*, 527 F.2d 1308,

1312–13 (5th Cir. 1976)). "The relevant determination is whether 'the worker has a viable economic

status that can be traded to other companies, keeping in mind that the lack of supervision of the

individual over minor regular tasks cannot be bootstrapped into an appearance of real

independence.'" *Hobbs*, 946 F.3d at 830 (quoting *Parrish*, 917 F.3d at 381).

Plaintiff argues that Defendants controlled "when [she] was to work, what information she

was to retrieve [from drivers], [and] what action she was to take." Doc. 24, Pl.'s Br., 11. She also

emphasizes that she had to seek approval before booking loads at certain rates; was expected to be available all hours of the day; had to request time off; and needed Defendants' authorization to have access to the load board. *Id.*; Doc. 24-1, Sanchez Decl., ¶¶ 7, 11, 15, 27.

Defendants paint a different picture. They assert that Plaintiff operated "without any direction or supervision." Doc. 28, Defs.' Br., ¶ 8; Doc. 14, Guardado Aff., ¶ 4. According to Defendants, "Plaintiff would find the load and dictate to Defendants when she wanted a load picked up; what type of equipment to use; and how much the third party would pay for the services." Doc. 28, Defs.' Br. ¶ 9. "[I]n each instance . . . she independently decided which of her several trucking clients would receive the load," Defendants claim. *Id.* ¶ 13; Doc. 14, Guardado Aff., ¶ 3.

Having reviewed the summary-judgment evidence, the Court finds a genuine issue of material fact prevents it from determining whether the control factor favors an employee or independent-contractor classification. Plaintiff's claims that Defendants controlled her work schedule, required her to seek approval before accepting loads for certain amounts of money, provided her access to the load board, and required her to complete invoicing work in addition to her dispatching duties all suggest that Defendants "controlled the 'meaningful' economic aspects of the business." *See Hopkins*, 545 F.3d at 343; *Hobbs*, 946 F.3d at 831 (finding evidence that plaintiffs performed work outside of their primary duties "lean[ed] in favor of employee status"). However, Plaintiff's alleged discretion and ability to place loads with other trucking companies cuts the other direction. *See* Doc. 14, Guardado Aff., ¶ 3; *cf. Hickey v. Arkla Indus., Inc.*, 699 F.2d 748, 750–51 (5th Cir. 1983). Taking the evidence as a whole, the Court concludes this factor will largely be decided by the jury's determinations of witness credibility at trial. Accordingly, the Court cannot resolve this factor in either party's favor at this stage on summary judgment.

ii.       *Extent of the relative investments of the worker and the alleged employer*

The Court next compares Plaintiff's individual investment to that of Defendants. Under this factor, "[t]he relevant investments are not those contributed to the defendants' business as a whole, but instead 'the amount the alleged employer and employee each contribute to *the specific job* the employee undertakes.'" *Lopez v. Reliable Clean-Up & Support Servs., LLC*, 2018 WL 3609271, at *9 (N.D. Tex. July 27, 2018) (quoting *Thibault v. Bellsouth Telecomms., Inc.*, 612 F.3d 843, 847 (5th Cir. 2010)).

Plaintiff admits that she used her own computer, telephone, and internet connection to complete her work for Defendants Doc. 24, Pl.'s Br., 12; Doc. 24-1, Sanchez Decl., ¶ 13. However, Plaintiff maintains that these expenses were not "investments" under this factor because she owned or arranged for each of these resources for her day-to-day life—not because she wanted to operate her own business. Doc. 24, Pl.'s Br., 12. As such, Plaintiff reasons that she made no investments in her work for Defendants. *Id.* Defendants do not expressly address this factor, but they do note that Plaintiff claimed business expenses on her 2019 tax return. *See* Doc. 28, Defs.' Br., ¶ 26.

The Court agrees with Plaintiff that, generally, a worker's use of their home's basic utilities is not an "investment" for the purposes of the economic-realities test. *See Halferty v. Pulse Drug Co.*, 821 F.2d 261, 266 (5th Cir. 1987) (finding a plaintiff's use of her phone and utilities in her remote position did not constitute an "investment" in her job because "[t]here [was] no evidence that [her] expenses increased as a result of [her] work, or that [the plaintiff] modified her home to enable her to provide better service"). However, the Court need not ignore evidence that Plaintiff treated these same costs as "business expenses" when filing her taxes. *See* Doc. 29. Defs.' App. Ex. A., 17 (claiming over $13,000 in business expenses for office supplies, electricity, gas, telephone, internet, and water).

At a minimum, Plaintiff's 2019 tax return suggests that Plaintiff spent money on "office supplies," directly refuting Plaintiff's contention that she made no investment in her job. *See id.*

The Court also notes that its inquiry under this factor is based on *relative* investments. *See Parrish*, 917 F.3d at 383–84. Here, even assuming Plaintiff's investment in her role was limited, neither party has pointed to evidence suggesting that Defendants made substantial investments in Plaintiff's job. *See generally* Doc. 24, Pl.'s Br.; Doc. 28, Defs.' Br. Plaintiff's Declaration states that she worked from home because Defendants did not maintain a physical office. Doc. 24-1, Sanchez Decl., ¶ 10. Thus, the only readily apparent investment made by Defendants was in providing Plaintiff with access to the load board by authorizing her to act as their agent. *See id.* ¶¶ 7, 13. But there is nothing in the record to indicate whether load board access was a significant cost for Defendants when viewed in comparison to Plaintiff's investment. For this reason, there is an issue of material fact preventing the Court from resolving this factor in either party's favor at the summary-judgment stage.

   iii.   *Degree to which the worker's opportunity for profit or loss is determined by the alleged employer*

The third factor examines the degree to which the worker's opportunity for profit or loss is determined by the alleged employer. Plaintiff argues she "was not included in any business decisions . . . did not provide input . . . on how to increase business[,] . . . [and] Defendants set her pay." Doc. 24-1, Sanchez Decl., ¶¶ 9, 14. Defendants respond that Plaintiff's relationships with other companies allowed her the freedom to "pass off" freight loads to other companies when one could not pick up a load and point out that her 2019 tax return shows that Plaintiff took a qualified business income deduction. Doc. 28, Defs.' Br., ¶¶ 12, 26; Doc. 14, Guardado Aff., ¶ 3; Doc. 29, Defs.' App. Ex. A.

In reviewing the summary-judgment evidence for this factor, conflicting inferences arise. In favor of Plaintiff's employee status is that Defendants set Plaintiff's pay and required her to obtain approval prior to accepting loads paying certain amounts. In favor of Plaintiff's independent-contractor status is her ability to place loads with other trucking companies due to the non-exclusive nature of her relationship with Defendants. *See* Doc. 29, Defs.' App. Ex. A, 17 (showing $73,836 in total gross receipts with $19,344 coming from other trucking companies). Also supporting an independent-contractor classification is that Plaintiff took advantage of tax deductions for business-related expenses. *See id.*; *Hobbs*, 946 F.3d at 832–33 (collecting cases where courts found that taking tax deductions for expenses supports independent-contractor status). Given the conflicting evidence and the parties' starkly different descriptions of how Plaintiff's outside work affected her day-to-day, this factor largely depends on judgments of witness credibility—determinations not appropriate for the Court to make on summary judgment. *See Lopez*, 2018 WL 3609271, at *11. Accordingly, the Court finds that this factor cannot be resolved at this stage.

        *iv.*      *Skill and initiative required in performing the job*

Next, the Court examines whether Plaintiff "exhibits the type of skill and initiative typically indicative of independent-contractor status." *Hopkins*, 545 F.3d at 345 (citing *Pilgrim Equip.*, 527 F.2d at 1314). Plaintiff correctly points out that courts typically look for "some unique skill set . . . or some ability to exercise significant initiative within the business." *Hopkins*, 545 F.3d at 345 (first citing *Carrell v. Sunland Constr., Inc.*, 998 F.2d 330, 333 (5th Cir. 1993); and then citing *Hickey*, 699 F.2d at 752 (5th Cir. 1983)). According to Plaintiff, her work for Defendants required only that she be able to "us[e] a computer, telephone[,] and internet." Doc. 24, Pl.'s Br., 14. Defendants respond

that Plaintiff's role "require[d] exceptional negotiation skills and communication skills to deal with multiple parties at the same time." Doc. 28, Defs.' Br., ¶ 16.

The Court finds this factor favors an employee classification. Communication and multitasking are general skills and not indicative of independent-contractor status. *See Hopkins*, 545 F.3d at 345; *Pilgrim Equip.*, 527 F.2d at 1314; *cf. Halferty*, 821 F.2d at 267 (finding a 911 dispatcher's role did not require specialized skill). While Plaintiff's role did require her to negotiate load rates with customers, Defendants have not demonstrated that Plaintiff's negotiation role required any training or background beyond simply being aware of industry knowledge. *Cf. Ferguson v. Tex. Farm Bureau*, 2021 WL 2349340, at *6 (W.D. Tex. May 19, 2021) ("[I]ndustry knowledge and efficiency is not indicative of independent-contractor status."), *report & recommendation adopted by* 2021 WL 7906826 (W.D. Tex. June 22, 2021). As such, this factor supports Plaintiff's employee status.

> v.       *Permanency of the relationship*

The final factor to be considered is the permanence of the relationship. "This factor weighs in favor of employee status when the work is done continuously and for a long period of time, but evidence that the worker provided similar services to others simultaneously weighs in favor of independent contractor status." *Mallory v. Lease Supervisors, LLC*, 2020 WL 137040, at *7 (N.D. Tex. Jan. 13, 2020) (quoting *Lopez*, 2018 WL 3609271, at *10). Here, it is undisputed that Plaintiff worked for Defendants for two years but also that Plaintiff occasionally spent some amount of time working for other trucking companies while also working for Defendants. *See* Doc. 24-1, Sanchez Decl., ¶¶ 3, 16; Doc. 29, Defs.' App. Ex. A, 17. As described above, however, the exact circumstances regarding Plaintiff's outside work remains in dispute. Thus, similar to the first and third factors, the Court finds that determination of this factor largely depends on determinations of

witness credibility that are properly reserved for the jury at trial. *See Lopez*, 2018 WL 3609271, at *11. Accordingly, a genuine issue of material fact prevents the Court from determining whether this factor favors employee or independent-contractor status as a matter of law.

In sum, the undisputed facts indicate that one factor favors employee status. However, the remaining four factors cannot be presently adjudicated due to genuine issues of material fact. Because the jury could reasonably resolve each of the remaining factors in Defendants' favor and find that Plaintiff was an independent contractor, Plaintiff has failed to show, on this record, that she was Defendants' employee as a matter of law. The Court's conclusion is buttressed by the fact that Plaintiff's motion relies entirely upon her own declaration—testimony that the jury is not required to find credible at trial. *See id. See generally Heinsohn v. Carabin & Shaw, P.C.*, 832 F.3d 224, 245 (5th Cir. 2016) (noting that courts should generally "resist the urge to resolve . . . dispute[s]" when summary-judgment motions rely predominantly on testimony). As such, because the Court finds Plaintiff has failed to establish each element of her FLSA claim as a matter of law, the Court **DENIES** Plaintiff's Motion for Partial Summary Judgment.

## IV.

## CONCLUSION

For the reasons set forth above, the Court finds there is a genuine issue of material fact regarding whether Plaintiff was an employee of Defendants under the FLSA. Accordingly, Plaintiff's Motion for Partial Summary Judgment (Doc. 23) is **DENIED**.

SO ORDERED.

SIGNED: July 6, 2022.

JANE J. BOYLE
UNITED STATES DISTRICT JUDGE